States v. Ramirez Good morning, your honors. May it please the court, Yelena Kononova from Quinn Emanuel or Carton Sullivan, court appointed counsel under the CJA for appellant Mr. Ramirez. In 2006, Mr. Ramirez was given a below guideline sentence, 17 and a half years, a substantial reduction below 30 years to life. When Mr. Ramirez applied for a sentence modification in 2014, he could have gotten 14 and a half years, a comparable reduction below the amended guidelines, 27 years. The only reason Judge Kodal couldn't modify his sentence to 14 and a half years is because of amended section 1B1.10, a rule which violates- uh, guidelines. It made certain defendants eligible for the reduction, right? That's correct, your honor. But your client was not among them. Now, how is that increasing his punishment? Your honor, I put it slightly differently. It made a class of defendants ineligible for reduction, among those my client. Well, what made it ineligible was a prior amendment, right? 759 is the one that says there's no departures below the new guideline range. And that was in 2011. Exactly. And he was eligible in 2014 under amendment 782, right? So that preceded by three years the benefit he may have gotten. Yes, your honor. So the rule that violates the ex post facto clause is in fact the 2011 amendment 759, which made defendant ineligible for a reduction in, uh, on sentence modification. But he wasn't eligible at that time. And as of 2006, Mr. Amiris was in fact eligible for a future sentence reduction, for a comparable reduction below the- In 2011, was he eligible for any reductions at that point? In 2011, there's no retroactive amendment that was applicable to Mr. Amiris. That is correct. The Supreme Court in Weaver v. Graham has said that ex post facto analysis is concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred. There was no opportunity for this kind of an amendment at the time of your client's commission of the crime. Indeed, the whole notion of these amendments is that they provide some leniency beyond what was in place at the time the crime occurred. So I don't know how they ever implicate the ex post facto clause, but I'll limit myself to this one in particular. Help me out. Your honor, as of 2006, Mr. Amiris in fact was eligible for a future comparable reduction on sentence modification. Talking about amendments that weren't even thought about, let alone existed at the time. So I understand that the law with respect to eligibility was different, but there was no such amendment in place. Your honor, in fact, in 2006, there are 24 amendments- Not this one. Not this ground. And I mean, courts have basically rejected this whole notion. I mean, the whole notion of ex post facto law is that they deprive citizens of notice and fair warning. He had no expectation of this particular guideline reduction. Your honor, he had a reasonable expectation of this guideline reduction. Those 24 retroactive amendments that I just mentioned, one of them was a retroactive reduction to the very drug tables under which Mr. Amiris was sentenced. In 2011, he had a reasonable expectation that someday the sentencing commission would adopt an amendment that would somehow benefit him. Your honor, in 2006, he had a reasonable expectation, and he was in fact, under the 2006 1B-1.10- Not a reasonable expectation. Absolutely not. Someday there will be an amendment that will somehow- Absolutely, your honor. Based on these 20- How do you reconcile this with Dillon v. United States? Dillon v. United States, in fact, says that the policy amendments are binding on the courts on sentencing modification. That's not the pertinent part. The problematic part for you is that Dillon says sentence modification proceedings authorized by 3582c2 are not constitutionally compelled and no constitutional requirement of retroactivity entitles defendants sentenced to a term of to the benefit of subsequent guideline amendments. Dillon says you have no constitutional argument that this has to apply retroactively to your client. Your honor, Dillon did not address next post facto clause challenge to the policy statements, and that reading of Dillon, I would submit, is irreconcilable with precedent like Lentz and Weaver v. Graham and Garner v. Jones, all of which say that taking away a defendant's eligibility for a future sentence reduction violates the ex post facto clause. So in the Lentz case, the defendant was eligible at the time of sentencing for early release as a result of future overcrowding. Now that overcrowding may not have taken place. The state had different ways of addressing the possibility of overcrowding, but when the state, after sentencing, made defendant ineligible for future release as a result of overcrowding, the Supreme Court held that is a violation of the ex post facto clause because it effectively increased his sentence. Courts that have read Weaver that way have talked about the good conduct formula in Weaver having already been in existence at the time of the defendant's offense. So if you're talking about a scheme already in existence, you can't disrupt that scheme, but that's not at all akin to what's happening here. There was no formula that applied to your client. Your Honor, in fact, it was in existence as of 2006 because in 2006, 1B1.10 said that a defendant had previously—  That's not the amendment. Your Honor, if you look at addendum 11 to our blue brief, which is the text of 1B1.10, as of 2006, it explicitly says a defendant who received a below-guideline sentence initially is eligible for a comparable reduction— Yeah, but you understand we're talking about apples and oranges. You're talking about eligibility and then a change in eligibility across the board, without regard to whether there ever is an amendment. Now we're talking about, though, your client wants the benefit of an amendment that was nowhere on the horizon at the time he committed his crime. Your Honor, the 24 retroactive amendments that were already in the books, and I would add the fact that Booker— I'm sorry, but that's not the amendment he wants applied to him. It's an analogous amendment. Amendment 782 is an amendment to the drug sentencing guidelines. Amendment 505, which was already on the books in 2006, was also a retroactive amendment to the drug guidelines. So 759 is passed in 2011, which eliminates this departure ability. Well, in 2012, could he have filed for a sentence reduction? In 2012, he could have potentially brought a 1983 action, maybe a class action, perhaps a declaratory judgment action, challenging that ex post facto violation. You're not listening to our questions. The question you were just asked was, could he have filed for an amendment? There's no amendment that was applicable to him in 2012. That's correct. He could have addressed the ex post facto violation that was complete as of 2011 in a civil rights action, in a different way. But that's correct. And according to this very Supreme Court precedent, Chief Judge Castillo of the Northern District of Illinois, who was a vice chair of the commission in the 2000s, held that this very provision, amended section 1B1.10, violates the ex post facto clause. He applied the very precedent that we rely on, Lentz versus Mathis, Garner versus Jones, all of which hold that taking away a prisoner's eligibility for a reduction, a future reduction in this prison term, violates the ex post facto clause. Thank you. Good morning, and may it please the court. I am Amanda Hull. I'm an assistant United States attorney in the Southern District of New York, and I am representing the United States on this appeal. The district court's denial of Ramirez's 3582 motion should be affirmed because the district court was without authority to order a sentence below the amended guidelines range. Section 1B1.10 specifically provides that the district court may not reduce a defendant's sentence below the newly calculated range, except in circumstances that Ramirez agrees do not apply to him. Correct. You just heard your adversary explain that that was not the law at the time he committed his crime, and therefore that the making him ineligible works an adversity that violates the ex post facto law. You're going to have to tell us why that's not right. And as Your Honor has noted, there was no amendment in place in 2006 or at the time when the defendant committed his crime that would have entitled him to any reduction. There has been no point in time. What about Weaver, though? Weaver says if you eliminate the opportunity for a future reduction, that may be problematic as well. Weaver says that there is no entitlement to lesser punishment, but that it's a notice issue. And the notice issue in Weaver was that there were laws on the books at the time that the defendant committed his crime that would have allowed for a reduction in punishment. And that's not the case here. There was no law on the books that would have entitled the defendant to any reduction. There was a scheme in place that would have entitled him to a reduction, perhaps, for future amendments. Well, the scheme that was in place would have permitted for a reduction, perhaps based on a departure, but not based on a variance. And while the guidelines at that time didn't address the difference between departures and variances, if we look to what the guidelines later determined when they did specifically address variances, it was to say that those were disfavored. How is this case different from the early release cases, the good time credit cases where the person is losing the opportunity in the future for a reduction? Because, Your Honor, in those cases at the time that those defendants committed their crimes, they had an entitlement that they had to a reduction in the future, where here there was not a possible reduction, where here there was not. Excuse me? Isn't that an important difference, though? If it's a possible entitlement, isn't that similar to a possible departure? Your Honor, Mr. Ramirez, at the time of his crime, did not have an entitlement to any even possible reduction because the amendment was not in place, nor was there a rule allowing for going below the amended guidelines range based on a variance. So in the example that you've just been given, the state had committed itself to give reductions if the prisoner earned them, and so the only contingency was whether the prisoner would earn them. But the state's obligation was fixed at the time. Is that what you're arguing? Yes, Your Honor. The — some hypothetical vision — So once it had set its own obligation, it couldn't pull it back? Yes, Your Honor. And additionally, Weaver does not address the specific context of 3582, whereas Dillon, as Your Honor noted, has addressed 3582. And aside from saying that there's not a constitutional entitlement to any reductions based on subsequent amendments to the guidelines, Dillon also specifically says that 3582 does not operate to increase sentences, but only to decrease them. As well as Your Honor has noted that each of the six courts of appeals to address this question have distinguished Weaver and have found that there is no ex post facto violation under these circumstances. Accordingly, because the district court had no authority to grant the requested relief, the district court should be affirmed and Ramirez's appeal denied, unless the panel has any additional questions. The government will otherwise rest on its submission. Thank you. Ms. Codenova, you have a few minutes in your battle. Thank you, Your Honor. Just a few brief points. Weaver v. Graham and the parole eligibility cases, including Garner v. Jones, in fact, discuss this important eligibility for future reduction. Even if there's an element of discretion that the sentencing authority would have. So, in the Garner v. Jones cases, there's an entitlement to have parole hearings every three years. Now, naturally, the defendant wasn't entitled to parole, wasn't certainly going to get parole, but the Supreme Court considered whether the delay in parole, in the interval between the parole hearings that the state put in place after sentencing violated the ex post facto clause. It's suggested to the government that what's going on in those cases is that the government has committed itself to doing certain things if certain contingencies arise, but it has committed itself at that point. And in that circumstance, there's an expectation that that cannot be changed. Why do you think that's analogous to this situation? Your Honor, under the language of 1B1.10 in 2006, which says, for a defendant who received a below guideline sentence, a comparable reduction below the amended guidelines may be appropriate, and which sets as the only floor for such a reduction time served. That is a commitment on behalf of the Sentencing Commission, which is the relevant authority here, that on sentence modification, a defendant could request in the district court's discretion a comparable reduction. But the difference, and this is what I need to address, is in the first example I gave you, there's the possibility of the prisoner earning good time credits or whatever unless there's a change. Here, by contrast, there's no opportunity for the reduction your client is seeking unless in the future there's an amendment. So the change that's a problem in the other cases is a change from the status quo as it exists at the time of the original sentence. Here, you need a change in the law to get any benefit. And that seems to me to be quite different. Your Honor, as Weaver itself indicates, and cases like Lindsay v. Washington as well, what we look to is the standard that has been changed. And the standard that's been changed here is this eligibility for a comparable reduction. I would agree with you as to amendments that were already in existence. But the amendment your client wants the benefit of didn't exist. Your Honor, I would submit that there was a reasonable expectation in 2006 that an amendment would be passed that reduced the drug guidelines that would make them retroactive and allow my client to seek a comparable reduction. There was a reasonable expectation in 2006 that the crack guidelines would be reduced? Absolutely, Your Honor. The drug guidelines were already reduced once in 1994, and that was on the books in 2006. Thank you. Thank you, Your Honor.